IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL INDICTMENT** |
| **v.** | **NO. 1:10-CR-48-RWS-GGB** |
| **NELSON GARCIA-DIAZ,** | |
| **Defendant.** | |

## FINAL REPORT AND RECOMMENDATION AND ORDER

Defendant Garcia-Diaz ("Defendant") is charged with two counts of being a felon in possession of a firearm and one count of possessing a firearm with a removed or altered serial number. Pending before this court is Defendant's Motion to Suppress Identification Testimony. [Doc. 27][1]. Defendant moves to suppress identification testimony from two officers of the Gwinnett County Police Department who are

---

[1] Also pending are the Government's Motion to Continue Suppression Hearing [Doc. 29] and Defendant's Second Motion for Extension of Time to File Post-Hearing Brief. [Doc. 53]. Both motions are GRANTED *nunc pro tunc.*

Defendant also filed a motion for production and name and location of confidential informant. [Doc. 28]. Defendant was directed to supplement this motion prior to the evidentiary hearing if he wished to pursue it. [Doc. 43]. He did not supplement the motion, mention it at the evidentiary hearing, or provide a basis for the court to conclude that the identity of the informant would help him. Therefore, this motion is deemed WITHDRAWN.

AO 72A
(Rev.8/82)

expected to testify that they saw Defendant in a van and fleeing from the officers the night of June 19, 2009 and continuing into early morning hours of June 20, 2009.

An evidentiary hearing on this motion was held before me on August 17, 2010. All transcript references are to the transcript of that hearing. For the reasons discussed below, I recommend that Defendant's Motion to Suppress Identification Testimony [Doc. 28] be **DENIED**.

### I.  FACTS

Late in the night of June 19, 2009, the Gwinnett County Drug Task Force was alerted that an illegal narcotics transaction was occurring on Angels Lane in Tucker, Georgia. (Tr. at 16; Def. Br. at 7). Members of the task force identified a suspicious van and contacted the Crime Suppression Unit ("CSU") to investigate. (Tr. at 17; Def. Br. at 7). Several officers, including D.M. Brucz and Jordan D. Griffin, were dispatched. (Tr. at 6). The relevant events of that night continued into the morning of June 20, 2009.

When the officers arrived at Angels Lane, they found a van with its lights and engine turned off. (Tr. at 7). Officer Brucz exited his patrol car, and while approaching the van, saw a man leaning back in the driver's seat. (Tr. at 7). Officer Brucz shined his flashlight into the car, revealing a thin, Hispanic-looking man with black hair. (Tr. at

2

10). The suspect made eye contact with Officer Brucz. Officer Brucz was in Defendant's presence for 10 to 15 seconds. (Tr. at 7, 20). At the time, Officer Brucz was standing less than two feet from the suspect with nothing obstructing his view. (Tr. at 8-9). After Officer Brucz identified himself as a police officer and gave some commands, the suspect started the van, placed it in reverse, and sped away. (Tr. at 7, 19).

In his patrol car a few feet away, Officer Griffin saw the van backing away and followed it down a residential street for a distance of approximately one or two football fields. As the two vehicles drove for approximately 100 yards, the suspect kept looking back at Officer Griffin. (Tr. at 41). Officer Griffin could clearly see the suspect in his headlights. (Tr. at 41). In all, Officer Griffin saw the suspect's face for five to ten seconds. (Tr. at 41). Eventually, the van went over a curb and crashed in the yard of a home. (Tr. at 41). Still in gear, the van crashed into Officer Griffin's patrol car as he was exiting it to pursue the suspect on foot. (Tr. at 41). Officer Griffin chased after the suspect and again saw the suspect's face when the suspect got caught in some vines. (Tr. at 42). The suspect eventually escaped into an apartment complex. (Tr. at 42).

Meanwhile, Officer Brucz and others searched the abandoned van. (Tr. at 10). Inside, they found a Gwinnett County inmate sheet belonging to the Defendant along

3

with his photographic identification card. (Tr. at 10). Officers also found in the van approximately 28 grams of cocaine and a loaded gun. (Doc. 28 at 3, 7-8). While looking through Defendant's vehicle, Officer Brucz called lead officer Choate and described the suspect and his identification documents. Officer Choate said that he already knew the suspect's identity. (Tr. 27).

Officers later obtained a warrant for Defendant's arrest. Prior to the arrest, officers, including Brucz and Griffin, were shown a picture of Defendant in order to identify him during the arrest. Officers arrested Defendant in a hotel room on June 25, 2009. (Doc. 52-1). Defendant made a statement, admitting among other things that he was the person who had been in the van on the night of June 19th. (Doc. 52-1).

Based on their observations of him, Officer Brucz and Officer Griffin were sure that Defendant was the person that they saw in the van and fleeing from them on the night of June 19th. (Tr. 14, 44, 45). Defendant moves to suppress the tesimony of Officer Brucz and Officer Griffin[2] regarding their identification of Defendant as the driver of (and person fleeing from) the van on June 19th and 20th.

---

[2] I am assuming that Officer Choate will not give identification testimony at trial, as he did not testify at the evidentiary hearing, and the government did not brief the admissibility of his testimony.

## II. DISCUSSION

Defendant argues that the display of Defendant's photograph and Officer Choate's comments to the other officers before Defendant was arrested on June 25th were so suggestive that the identification testimony of Officer Brucz and Officer Griffin should not be allowed at trial.

An eyewitness identification may constitute a due process violation if the identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967); see also Manson v. Brathwaite, 432 U.S. 98, 104 (1977); Neil v. Biggers, 409 U.S. 188, 196 (1972). The fact that the identification procedure used may have been suggestive, alone, does not violate due process. See Neil, 409 U.S. at 198-99. Rather, the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199. The Supreme Court has identified several factors to consider in evaluating "the likelihood of misidentification," including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the

5

confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199-200.

Here, under the totality of the circumstances, the identification testimony of the officers at trial will be reliable. The proposed witnesses are trained police officers who had sufficient opportunity to view the Defendant in his vehicle and during his flight; the officers' attention was focused on the Defendant; their prior description of the suspect, though minimal, was accurate; they are certain about their identification and there were only five or six days between their initial encounter with Defendant and Defendant's arrest. Moreover, the identification documents left in Defendant's van after he fled the police, along with Defendant's confession, demonstrate the likelihood that the officers' identification of Defendant as the person they saw in the van is accurate.

### III. CONCLUSION

In sum, I **RECOMMEND** that Defendant's Motion to Suppress Identification Testimony [Doc. 27] be **DENIED**.

Defendant's Motion for Production and Name and Location of Confidential Informant [Doc. 28] is **DEEMED WITHDRAWN**.

AO 72A (Rev.8/82)

The Government's Motion to Continue Suppression Hearing [Doc. 29] and Defendant's Second Motion for Extension of Time to File Post-Hearing Brief [Doc. 53] are **GRANTED** *nunc pro tunc.*

There are no other pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this  2nd  day of December, 2010.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)